**Hansen**
**v.**
**CIGNA Insurance Co.**
*[Cite as 3 AOA 46]*

*Case No. CA 11766, CA 11994*
*Montgomery County (2nd)*
*Decided May 24, 1990*

*Charles A. Johnson and Thomas A. Hansen, Suite 201, 345 West Second Street, Dayton, Ohio 45402, Attorneys for Plaintiffs-Appellants.*

*Thomas H. Pyper and Linda S. Holmes, P. O. Box 1805, Dayton, Ohio 45401, Attorneys for Defendant-Appellee.*

*Per Curiam.*

This appeal is a consolidation of two appeals by Thomas A. Hansen and Susan A. Hansen. The Hansens appealed a Montgomery County Court of Common Pleas July 18, 1989, order sustaining CIGNA's motion for judgment on the pleadings on its Cross-Application for an Order Confirming [the] Arbitrator's Award. The Hansens also appealed the Kettering Municipal Court's December 6, 1989, order sustaining the defendant's motion for reconsideration or, in the alternative, motion for summary judgment. This order, in effect, dismissed the Hansens' complaint in the municipal court. The appeals were consolidated pursuant to this court's January 29, 1990, decision and entry.

On February 22, 1989, the Hansens filed a complaint in the Montgomery Court of Common Pleas which alleged that they entered into a "Home Warranty Agreement" with CIGNA Insurance Company, hereinafter CIGNA. The complaint alleged that a dispute arose wherein the Hansens claimed that the mortar used in building their house contained too much sand and that the dispute was submitted to arbitration pursuant to the agreement on November 3, 1988. The complaint alleged that the arbitrator's written decision varied from his statements at the hearing and that the arbitrator's actions evidenced "partiality or corruption *** and [m]isconduct in stating his decision at the hearing and then fraudulently issuing an award the

reverse of [sic] his decision." The Hansens prayed that the court order the arbitrator to correct his award to reflect his oral decision or, in the alternative, that the court vacate the award.

Attached to the Hansen's complaint were ten exhibits indicating that on September 21, 1977, Thomas and Susan Hansen signed a document entitled "Limited Warranty Home Warranty Agreement." (Exhibit A.) The front page of the document shows that the Hansens purchased a home built by Swango Homes, Inc. The following seven pages of the document outline the terms of the agreement. Page four of the agreement states, in pertinent part, as follows:

### "LIMITED WARRANTY

"*Coverage During First Year.* For one year, beginning on the commencement date filled in on page 1, the Builder warrants that the home will be free from defects due to noncompliance with the Approved Standards and from major construction defects.

"A 'major construction defect' is actual damage to the load-bearing portion of the home (including damage due to subsidence, expansion or lateral movement of soil from causes other than flood or earthquake) which affects its load-bearing function and which vitally affects (or is imminently likely to produce a vital effect on) the use of the home for residential purposes.

"*Coverage For Up to One Year.* The Builder warrants that all appliances, fixtures and items of equipment will be free from defects due to noncompliance with the Approved Standards for one year or for the term of the manufacturer's written warranty (if a manufacturer's written warranty is assigned to you by the Builder), whichever is less.

"*Coverage During Second Year.* During the second year after the commencement date, the Builder continues to warrant that the home will be free from major construction defects and that the plumbing, electrical, heating, and cooling systems will perform according to the Approved Standards, unless their failure is the result of a defect in an appliance, fixture, or item of equipment ***."

Pages five through seven of the agreement state, in pertinent part, as follows:

### "INSURANCE COVERAGE
"* * *

"*Scope of Insurance Coverage.* The insuror, subject to a one time $50.00 deductible, will meet all the Builder's obligations under this warranty as set forth in this agreement if, after completion of arbitration, the Builder for any reason fails to

meet them. *The insuror will directly insure against major construction defects for and additional eight years (beginning two years after, and ending ten years after, the appropriate commencement date).* The total liability of the insuror during the ten years covered by this agreement is limited to the purchase price filled in on page 1.
"* * *

### "HOW TO MAKE A WARRANTY CLAIM
"* * *

"*Demand for Dispute Settlement.* If you and the Builder disagree concerning the warranty obligations under this agreement (or he does not respond to your complaint), you may request informal dispute settlement concerning your claim mailing the 'Demand for Dispute Settlement' form (see back page) to the Local HOW Council. You may also request informal dispute settlement by submitting a letter specifically requesting dispute settlement and identifying yourself, the Builder, the home, the defects claimed and the remedies sought.

"*Conciliation and Arbitration.* HOW provides for conciliation and for *nonbinding arbitration* conducted by the American Arbitration Association under its Expedited Home Construction Arbitration Rules (or by another approved organization). No fee or deposit is required. No arbitration decision may call for performance beyond the scope of the warranty provided in this agreement.

"After it receives your 'Demand for Dispute Settlement' form, the Local HOW Council will assign a conciliator, who will attempt to work out a voluntary conciliation agreement between you and the Builder as to the settlement of your claim. After you have attempted conciliation, you may demand arbitration of any unresolved warranty dispute between you and the Builder.
"* * *

### "HOW TO MAKE AN INSURANCE CLAIM

"If a claim arises under the warranty and the Builder cannot or will not cooperate in HOW dispute settlement procedures, the Local HOW Council will contact the insuror and the insuror will (if it disputes the claim) take the place of the Builder in the dispute settlement procedures and perform as directed by the decision.

"If the Builder cooperates in HOW dispute settlement procedures, but fails to perform as directed within the time specified, you should notify your Local HOW Council, which will arrange with the insuror for performance of the warranty obligations under the decision.

"*If a claim arises with respect to the direct insurance against the major construction defects during the third through tenth years after the commencement date(s) of this agreement*, you should notify your Local HOW Council, which will arrange with the insuror to investigate the claim. *If the insuror disputes the claim, you may request arbitration*. The insuror has agreed to be bound by the arbitrator's decision, subject to the following paragraph. *Prerequisite to Payment by Insuror*. The insuror will not pay a claim until you have completed arbitration *and accepted the decision* (unless the insuror chooses not to dispute the claim), and have signed and delivered a release of all rights you may have against the insuror arising out of the specific claim, and, in the case of a claim arising under the first two years' coverage, until you have signed and delivered to your Local HOW Council an assignment to the insuror of your claim against the Builder." (Emphasis added.)

Exhibit B is a document dated September 18, 1987, signed by Thomas and Susan Hansen, entitled "Demand for Dispute Settlement." The document stated, in pertinent part, as follows:

"The mortar used in building our house contains too much sand, which is crumbling out of the joints. Specifically, the fireplace, inside and outside, is in the worst shape. Even Swango's bricklayer said this is the problem, but Swango advised they could do nothing."

The remedy sought was to tear down and rebuild the fireplace and inspect the rest of the house.

Exhibit C, the December 12, 1988, award of the arbitrator, Robert L. Summerlot, stated, in pertinent part, as follows:

"1. The brick veneer of the house is not a structural component of the building and is not covered in the Home Owners Warranty as underwritten by the Respondent, CIGNA INSURANCE CO.

"2. The fireplace is also not a load bearing unit and therefore does not constitute a major structural defect."

Therefore, the arbitrator AWARDS as follows:

"1. The claims of the Claimant, THOMAS HANSEN, are hereby DENIED.

"2. *This Award is in full settlement of all claims submitted to this arbitration.*"

Exhibit D is a letter dated January 3, 1989, from Thomas Hansen to Linda Lampe of the American Arbitration Association seeking a modification and clarification of the arbitrator's award. Attached to the letter were affidavits by Robert C. Miller, Jim Randall, Susan Hansen, and Thomas Hansen. (Exhibits D-1, D-2, D-3, D-4.) The affidavits all stated, in pertinent part, as follows:

"Affiant states that at the end of the arbitration hearing at the Hansen house, 1047 Green Timber Trail, Spring Valley, Ohio 45370, the arbitrator, Robert L. Summerlot, stated that on the evidence presented by Russ Hardin, Scholten Construction Co., Robert Miller, R.C. Miller Builders and Jim Randall, Bricklayer, that the fireplace, inside and outside, did constitute a load bearing unit and, therefore, did constitute a major structural defect and that he was going to order it torn down and rebuilt."

The arbitrator also wanted a report on the firebox which Thomas Klenke, Engineer examined and also determined that it was completely defective.

The arbitrator stated that as soon as the firebox report was submitted he would finalize the order to tear down and rebuild.

Exhibit E is an unnotarized handwritten note signed by Summerlot dated February 6, 1989, which state:

"The statements provided by Thomas Hansen are substantially correct, except that I said that if the engineers report verified that the fireplace constituted a structural hazard to the home then I would rule in the plaintiffs behalf.

"The engineer's report did not show that the fireplace defect placed the structure in jeopardy, only that there was water leakage and some mortar cracks. He clearly stated that there was no outside wall movement. Since the fireplace and chimney had no structural fault, I had no choice but to yield to the engineers findings.

"Had I ruled otherwise the insurance company would have had a valid appeal against my decision."

Exhibit F is a letter written by Thomas Klenke of Pretzinger & Klenke, Inc. Consulting Engineers which stated, in pertinent part, that the fireplace had been inspected, described the damage, stated that "no outside foundation wall movement was observed," and recommended that the chimney, flue, fire box, and limestone facing be entirely rebuilt.

On March 17, 1989, at 2:07 p.m. CIGNA filed in the Montgomery County Court of Common Pleas an answer and cross application for an order confirming the arbitrator's award pursuant to R.C. 2711.09. The cross-application adopted the exhibits to the Hansens' application. On

March 17, 1989, at 2:48 p.m. the Hansens filed a voluntary dismissal of their application. On June 23, 1989, CIGNA filed a motion for judgment on the pleadings, and the court sustained the motion. The Hansens timely appealed the court's order.

On March 16, 1989, the Hansens filed a complaint in the Kettering Municipal Court and alleged that CIGNA breached the Home Warranty Agreement. The Hansens alleged that a major structural defect existed in the fireplace in their home and that CIGNA failed to pay for the repairs which cost between $5,000 and $8,000. CIGNA filed a motion to dismiss for failure to state a claim upon which relief could be granted and for lack of jurisdiction since the Hansens were litigating the same case in the Montgomery County Court of Common Pleas. On April 28, 1989, the Kettering Municipal Court overruled CIGNA's motion to dismiss and stated that it did not lack jurisdiction since the Hansens dismissed their case in the court of common pleas on March 17, 1989.

On May 10, 1989, CIGNA filed a motion for reconsideration or, in the alternative, a motion for summary judgment. A hearing on the motion for reconsideration was held on November 30, 1989, and on December 6, 1989, the court sustained the motion. The Hansens timely appealed the order which, in effect, dismissed their complaint.

The Hansens raise four assignments of error in this appeal:

"The [Montgomery County] Court [of Common Pleas] committed reversible error in granting the judgment on the pleadings and confirming the arbitrator's award.

"The [Montgomery County] Court [of Common Pleas] committed error when it did not grant Appellants' Motion to Dismiss to let the Appellants proceed in the Kettering Municipal court.

"The [Montgomery County] Court [of Common Pleas] committed error in granting the judgment on the pleadings as this case is not controlled by O.R.C. Section 2711.

"The [Kettering Municipal Court] committed reversible error in granting the motion to dismiss Appellant's Complaint."

In their first assignment of error, the Hansens argue that R.C. 2711.01 *et seg* was inapplicable to this case and that the Montgomery County Court of Common Pleas erred in granting the motion for judgment on the pleadings since material issues of fact were raised by their pleadings. In their third assign-

ment of error, they argue that the court of common pleas did not have jurisdiction to grant CIGNA's motion for judgment on the pleadings and cross-application for an order confirming the arbitrator's award because the arbitration was not binding and R.C. 2711.01 *et seq* was inapplicable to this case.

The Hansens rely on language that discusses non-binding arbitration at page 6 of the warranty agreement. Their brief cites language from the agreement found under the heading entitled "How to Make a Warranty Claim." This section of the document states, in pertinent part, as follows:

*"Demand for Dispute Settlement.* If you and the Builder disagree concerning the warranty obligations under this agreement (or he does not respond to your complaint), you may request informal dispute settlement concerning your claim by mailing the 'Demand for Dispute Settlement' form (see back page) to the Local HOW Council. You may also request informal dispute settlement by submitting a letter specifically requesting dispute settlement and identifying yourself, the Builder, the home, the defects claimed and the remedies sought.

*"Conciliation and Arbitration.* HOW provides for conciliation and for nonbinding arbitration conducted by the American Arbitration Association under its Expedited Home Construction Arbitration Rules (or by another approved organization). No fee or deposit is required. No arbitration decision may call for performance beyond the scope of the warranty provided in this agreement.

"After it receives your 'Demand for Dispute Settlement' form, the Local HOW Council will assign a conciliator, who will attempt to work a voluntary conciliation agreement between you and the Builder as to the settlement of your claim. After you have attempted conciliation, you may demand arbitration of any unresolved warranty dispute between you and the Builder."

The limited warranty is described in the agreement as lasting for two years from the commencement date which was September 21, 1977, in this case. The Hansens' Demand for Dispute Settlement, which described the problem with the fireplace, was dated September 19, 1987, almost ten years after the commencement date of home warranty agreement. Accordingly, the Hansens' claim would not have been covered by the warranty provisions of the home warranty agreement.

The agreement states at page five that "[t]he insuror will directly insure against major construction defects for an additional eight years (beginning two years after, and ending ten years after, the appropriate commencement date)." It is apparent from the terms of the agreement that the only claim the Hansens could have made was an insurance claim. The agreement stated that major construction defects occurring from three to ten years after the commencement date of the agreement were to be covered by insurance. The Hansens' claim arose ten years after the commencement date of the agreement. The agreement describes how to make an insurance claim and states at p. 7, in pertinent part, as follows:

"If a claim arises with respect to the direct insurance against major construction defects during the third through tenth years after the commencement date(s) of this agreement, you should notify your Local HOW Council, which will arrange with the insuror to investigate the claim. If the insuror disputes the claim, your *may* request arbitration. The insuror has agreed to be bound by the arbitrator's decision, subject to the following paragraph.

"*Prerequisite to Payment by Insuror.* The insuror will pay a claim until you have completed arbitration *and accepted the decision* (unless the insuror chooses not to dispute the claim), and have signed and delivered a release of all rights you may have against the insuror arising out of the specific claim, and, in the case of a claim arising under the first two years' coverage, until you have signed and delivered to your Local HOW Council an assignment to the insuror of your claim against the Builder." (Emphasis ours.)

No mention of non-binding arbitration is made in the insurance claim section of the agreement. Non-binding arbitration is mentioned only under the section explaining how to make a warranty claim. While the trial court's entries do not construe the agreement, we infer from the court's action confirming the arbitrator's award that it concluded from the insurance claim section that in resolving insurance claim disputes, the parties' intent was to have insurance claim determined by arbitration and that the arbitrator's decision on such claims would be binding.

We are constrained to disagree. Under the insurance claim section, the insuror agrees to be bound by the arbitrator's decision *if* the insured agrees to be bound. However, the insured is neither required to initiate arbitration nor accept the decision of the arbitrator. We agree with the

Hansens that R.C. 2711.01 *et seq* was not applicable to this dispute.

CIGNA filed a Cross-Application for an Order Confirming the Arbitrator's Award in the Montgomery County Court of Common Pleas pursuant to R.C. 2711.09 which states as follows:

"At any time within one year after an award in an arbitration proceeding is made any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon the court shall grant such an order enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in sections 2711.01 and 2711.11 of the Revised Code. Notice in writing of the application shall be served upon the adverse party or his attorney five days before the hearing thereof."

Sections 2711.01 and 2711.11 state, in pertinent part, that the court of common pleas shall make an order to vacate, modify, or correct the arbitrator's award "upon the application of any party to the application ***." In this case, the Hansens dismissed their "Application for Correction and/or Vacation of Arbitration Award" after CIGNA filed its "Answer and Cross-Application for an Order Confirming the Arbitrator's Award." When CIGNA moved for judgment on the pleadings requesting that the court confirm the arbitrator's decision pursuant to R.C. 2711.09, there was then no application by the Hansens before the court requesting that the court modify or vacate the arbitrator's decision pursuant to R.C. 2711.01 or R.C. 2711.11.

The Hansens argue that the court erred in granting CIGNA's motion for judgment on the pleadings and confirming the arbitrator's award since CIGNA's cross-application referred to exhibits attached to their complaint (which was their application to modify and/or vacate the arbitrator's decision). The Hansens maintain that the exhibits adopted by reference in CIGNA's cross-application raise issues of fact which preclude a judgment on the pleadings.

We agree that CIGNA's cross-application adopted by reference the exhibits attached to the Hansen's complaint. Nonetheless, R.C. 2711.09 clearly provides that when an application for an order confirming an arbitrator's award is made and no application to vacate or modify is filed pursuant to R.C. 2711.10 or R.C. 2711.11, "the court shall grant such an order and enter judgment thereon." The comment to R.C. 2711.09 states, in pertinent part, that a motion to enforce an arbitrator's award "must be granted by the court, unless cause is shown for its modification

or vacation ***." Since no application to vacate or modify the arbitrator's award had been filed subsequent to CIGNA's application for an order confirming the arbitrator's award, the language of R.C. 2711.09 required that the court grant CIGNA'S application and confirm the arbitrator's award, *if* R.C. 2911.01 *et seq* was applicable.

For the reason stated above, we conclude that the arbitration of the insurance claim was non-binding and that R.C. 2911.01 *et seq* was accordingly not implicated. Thus, while procedurally correct had R.C. 2911.01 been applicable, judgment on the pleadings was error given the non-binding natural of the arbitration.

The first and third assignment are sustained.

The Hansens argue in their second assignment of error that the common pleas court erred in failing to grant their to dismiss. They argue that their May 22, 1989, motion to dismiss CIGNA's cross-application for an order confirming the arbitrator's award should have been granted since the court had no jurisdiction under R.C. 2711.09 to rule on CIGNA'S application for an order confirming the arbitrator's award. The contention that the common pleas court lacked jurisdiction is, of course, based on the further contention that the arbitration was not binding. The second assignment error is sustained given our agreement with the Hansens that the arbitration was non-binding.

The fourth assignment of error states that the Kettering Municipal Court erred in granting CIGNA's motion to dismiss. The Hansens argue that they should have had a "trial de nova" [sic] in the Kettering Municipal Court because the Montgomery County Court of Common Pleas had no jurisdiction to rule on the case under Revised Code Chapter 2711, i.e. because the arbitration was not binding. We agree. The fourth assignment is sustained.

The judgments appealed from will be reversed.

Pursuant to App. R. 12, the Hansens' motion to dismiss CIGNA's Cross Application For An Order Confirming Arbitrator's Award will be sustained, and the Cross Application will be dismissed. (CA 11766).

In CA 11994, the matter will be remanded to the Kettering Municipal Court for further proceedings consistent with this opinion.

*Judgment reversed and*
*cause remanded.*

WOLFF, P.J., BROGAN, J. and FAIN, J., concur.